UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| *In Re:* | ) | Case No. 17-58462-pmb |
| KASHKA SCOTT, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| RES-GA TWO, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adversary Proceeding |
| v. | ) | No. _____ |
| | ) | |
| KASHKA SCOTT, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT OBJECTING TO DISCHARGE AND TO DETERMINE DISCHARGEABILITY OF DEBT

COMES NOW RES-GA TWO, LLC ("Plaintiff") and for its Complaint Objecting to Discharge and to Determine Dischargeability Of Debt against Debtor Kashka Scott ("Defendant") shows the Court the following:

## JURISDICTION AND VENUE

1.     This Adversary Proceeding is being brought in connection with Debtor's case under Chapter 7 of Title 11, Case Number 17-58462-pmb (the

2.      "Bankruptcy Case") filed Debtor filed a voluntary petition under Chapter 7 of the Bankruptcy Code on May 18, 2017 (the "Petition Date") now pending in this Court.

3.      This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 523, 727 *et seq*.

4.      This Adversary Proceeding constitutes a core proceeding as that term is defined under 28 U.S.C. § 157(b)(2)(A)(E),(H), (I) and (O).

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

6.      This Adversary Proceeding arises in and related to the case of *In re Kashka Scott*, Case No. 17-58462-pmb  (the "Bankruptcy Case"), pending in the United States Bankruptcy Court for the Northern District of Georgia.

7.      The Defendant is subject to the jurisdiction of this Court.

<u>PARTIES</u>

8.      Debtor is an individual who may be served with process at the summons and complaint in accordance with Fed.R.Bankr.P. 7004(b)(9) by mailing it to Debtor by U.S. First Class Mail, postage prepaid at his residence, 437 Harper Road SE, Atlanta, Georgia, 30315, by mailing it to his attorney Leonard R. Medley, III, Esq. of Medley & Associates, LLC at Suite 1450, 2727 Paces Ferry Road, Atlanta, GA 30339, or through any other means allowed by law.

## FACTUAL BACKGROUND

### I.    *The Indebtedness*

9.    On July 18, 2007, Scott & Sons Holdings, LLC ("Scott & Sons") executed that certain promissory note to FirstCity Bank ("Original Lender") in the original principal amount of $2,294,427.00 (the "Note" or "Loan"). A true and correct copy of the Note is attached hereto as **Exhibit "1"**.

10.    On or about July 18, 2007, Scott and Sons Holdings and Southside Greenspace Initiative, LLC ("SGI") executed that certain a Deed to Secure Debt, Assignment of Rents, and Security Agreement recorded at Deed Book 45428, Page 487, Fulton County, Georgia Records (the "Security Deed") granting Original Lender a security interest in those certain tracts of unimproved real property more fully described therein (the "Property"). A true and correct copy of the Security Deed is attached hereto as **Exhibit "2"**.

11.    Debtor executed those certain Omnibus Guarantys dated July 18, 2007 and November 1, 2008 in favor of Original Lender in which Debtor guaranteed all indebtedness owed by Scott & Sons to Original Lender (the "Guarantys"). True and correct copies of the Guarantys are attached hereto as **Exhibit "3"**.

12.    On November 1, 2008, Scott & Sons and SGI and Original Lender executed that certain Note Modification extending the maturity date of the Note to

May 1, 2009 (the "Note Modification") (collectively, the Note, Guarantys, Security Deed, Note Modification, and all loan documents related thereto are referred to herein as the "Loan Documents"). A true and correct copy of the Modification is attached hereto as **Exhibit "4"**.

13.    On November 1, 2008, Scott & Sons and SGI and Original Lender executed that certain Modification of Deed to Secure Debt recorded at Deed Book 47484, Page 98, extending the maturity date of the Security Deed to May 1, 2009 (the "Security Deed Modification") (collectively, the Note, Guarantys, Security Deed, Note Modification, Security Deed Modification, and all loan documents related thereto are referred to herein as the "Loan Documents"). A true and correct copy of the Security Deed Modification is attached hereto as **Exhibit "5"**.

14.    On or about February 9, 2010, the Federal Deposit Insurance Corporation ("FDIC"), as receiver for Original Lender, assigned the Loan Documents to MULTIBANK 2009-1 RES-ADC VENTURE, LLC ("Multibank"). A true and correct copy of an Assignment of Real Estate Deed to Secure Debt from the FDIC to Multibank recorded at Deed Book 48930, Page 553 (the "FDIC Assignment") is attached hereto as **Exhibit "6"**.

3

15.    On or about June 30, 2010 Multibank assigned the Loan Documents to Plaintiff pursuant to an Omnibus Assignment. A true and correct copy of the Omnibus Assignment is attached hereto as **Exhibit "7"**.

16.    On or about June 30, 2010, Multibank executed an Assignment of Real Estate Deed to Secure Debt recorded at Deed Book 49174, Page 662 (the "Multibank Assignment") conveying the Security Deed to Plaintiff (the FDIC Assignment, Omnibus Assignment, and Multibank Assignment are referred to herein as the "Assignment Documents"). A true and correct copy of the Multibank Assignment is attached hereto as **Exhibit "8"**.

17.    Plaintiff is the owner of the Loan Documents.

18.    Scott & Sons and SGI defaulted on failed to repay the loan as required by the Loan Documents.

## II.    *The State Court Actions and the Judgments*

19.    On June 29, 2011, Plaintiff obtained an Amended Final Order and Default Judgment Against Defendant Kashka Scott in the Superior Court of Fulton County, Georgia in Case No. 2010CV188651 (the "Judgment Case") against Defendant for the unpaid principal amount of $2,294,427.00; accrued interest in the amount of $1,380,862.24, attorneys' fees in the amount of $551,293.38, and

post-judgment interest at accruing at 18% per annum (the "Kashka Judgment"). A true and correct copy of the First Judgment is attached hereto as **Exhibit "9"**.

20.     On February 29, 2012, the Superior Court of Fulton County entered judgment against, *inter alia*, Scott & Sons and SGI pursuant to a Final Order and Default Judgment Against Defendants Southside Greenspace Initiative, LLC, Scott & Sons Holdings, LLC, and Shields Scott in the Judgment Case (the "Scott & Sons Judgment")(collectively, the Kashka Judgment and Scott & Sons Judgment are referred to herein as the "First Judgments"). A true and correct copy of the Scott & Sons Judgment is attached hereto as **Exhibit "10"**.

21.     On September 4, 2012, Plaintiff foreclosed the property (the "Foreclosure") pursuant to that certain Deed Under Power recorded at Deed Book 51655, Page 32, Fulton County, Georgia records (the "Foreclosure Deed").

22.     Following entry of the First Judgment, Defendant, Scott & Sons, and others engaged in the fraudulent transfers of assets made by Defendant and/or Scott & Sons to avoid repayment of the First Judgments.

23.     On or about April 14, 2009, as part of such fraudulent scheme, Defendant organized a separate limited liability company named Scott and Sons Holdings LLC LTD ("Scott & Sons LTD"). A true and correct copy of the Articles of Organization for Scott & Sons LTD are attached hereto as **Exhibit "11"**.

24.     On or about December 23, 2009, Defendant filed those certain Articles of Amendment to Articles of Organization changing Scott & Sons LTD's name to S2, LLC ("S2")(the "S2 Name Change"). A true and correct copy of the S2 Name Change is attached hereto as **Exhibit "12"**.

25.     On or about June 1, 2010, Scott & Sons executed Quitclaim Deeds conveying those certain real properties commonly known as 668 McDonough Boulevard SE, Fulton County, Atlanta, Georgia 30315 ("668 McDonough"), 310 McDonough Boulevard SE, Fulton County, Atlanta, Georgia 30315 ("310 McDonough"), 1654 Jonesboro Road SE, Fulton County, Atlanta, Georgia 30315 ("1654 Jonesboro"), and 1650 Jonesboro Road SE, Fulton County, Atlanta, Georgia 30315 ("1650 Jonesboro")(collectively, the "Scott & Sons Properties") to Scott & Sons LTD for no consideration recorded at Deed Book 49165, Pages 645 – 652 (the "Scott & Sons LTD Quitclaim Deeds"). True and correct copies of the Scott & Sons LTD Quitclaim Deeds are attached hereto as **Exhibit "13"**.

26.     Defendant executed the Scott & Sons LTD Quitclaim Deeds on behalf of Scott & Sons.

27.     On October 29, 2013, Plaintiff filed a lawsuit against, *inter alia*, Defendant, Scott & Sons, and S2 alleging claims against them for fraudulent conveyances, *inter alia,* of the Scott & Sons Properties and transfers of monetary

assets via depositing checks made payable to Scott & Sons into an account(s) held by S2 in the Superior Court of Fulton County, Georgia under case number 2013CV238363 (the "UFTA Case").

28.    On September 10, 2015, the Fulton County Superior Court entered a Final Judgment in the UFTA Case (the "UFTA Judgment")(collectively, the First Judgments and UFTA Judgments are referred to herein as the "Judgments") against, *inter alia*, Defendant for $653,900.00 in general damages, $49,850.00 in attorneys' fees, and $2,100,000.00 in punitive damages (the "Punitive Damages"). A true and correct copy of the UFTA Judgment is attached hereto as **Exhibit "14"**.

29.    The UFTA Judgment states, *inter alia,* that "Defendants[1] willfully, intentionally, and maliciously transferred the properties at issue" and "deposited checks made out to Scott & Sons Holdings, LLC into accounts in the name of S2, LLC f/k/a Scott & Sons Holdings LLC LTD" (the "Scott & Son Cash Transfers).

30.    The UFTA Judgment states "Defendants[2] transferred the properties and deposited the checks with the specific intent to defraud Plaintiff and hinder Plaintiff from collecting upon its judgments in violation of the Uniform Fraudulent Transfers Act."

---

[1] Including Debtor.
[2] Including Debtor.

31.    The UFTA Judgment contains a specific award of Punitive Damages as a result of Defendant's fraudulent and malicious intent to cause harm and injury to Plaintiff.

32.    The amount of Debtor's liability to Plaintiff is established as a matter of *res judicata*, collateral estoppel, and similar judicial doctrines for purposes of this adversary proceeding by virtue of the UFTA Judgment.

### III.    *Efforts to Delay and Frustrate Collection of the Judgments*

33.    The Note was in default and accelerated no later than May 1, 2009.

34.    Since the time of entry of each of the Judgments, Defendant has taken deliberate, calculated efforts to delay and frustrate Plaintiff's efforts to collect on its Judgments.

35.    Defendant executed the Scott & Sons LTD Quitclaim Deeds and the Scott & Son Cash Transfers were made after entry of the Note was in default, had matured, and collection or litigation on same was threatened or imminent.

### A. *Diversion of Income to K2J*

36.    After the Judgements were entered Defendant opened a deposit account  maintained with Georgia Primary Bank  in an account in the name K2J

Ventures, LLC ("K2J") denominated with an account number ending in 1170 (the "K2J Account").

37.    Defendant is the sole owner and member of K2J.

38.    Defendant is a licensed general contractor that performs contracting and project management services.

39.    Defendant either deposits checks made payable to him personally into the K2J Account or has his customers or clients make payment directly to K2J rather than to him personally.

40.    Attached hereto as **Exhibit "15"** is a true and correct copy of the K2J Account signature card dated April 25, 2014 showing Defendant as the sole person with signature authority on the K2J Account.

41.    Defendant utilizes the K2J Account to pay his personal expenses, including the mortgage on his residence, the auto loan on his vehicle, his credit card expenses, gas, utilities, groceries, travel, and/or entertainment (the K2J Account Transfers").

42.    Through the use of the K2J Account, Defendant diverted or transferred his personal income and assets to K2J to avoid garnishment or other  collection efforts by Plaintiff.

43.    Defendant's purpose for having payments for his work made to K2J rather than himself personally was to hinder and delay his creditors' collection efforts.

B. *Diversion of Income Through Use of the ERS Credit Card*

44.    In or around 2014, ERS Materials, LLC ("ERS") issued Defendant an American Express credit card with a card number ending in 2071 (the "ERS Credit Card").

45.    ERS, Mission Builders, LLC ("Mission Builders"), Mission Development, LLC ("Mission Development"), and Clark Geotechnical, LLC are companies for which Defendant has performed work allegedly as an outside contractor.  These companies are collectively referred to as the "Clark Entities".

46.    Defendant utilizes the ERS Credit Card for extensive personal expenses in addition to business expenses in lieu of receiving personal cash income from the Clark Entities directly (the "Credit Card Transfers")(Collectively, the K2J Account Transfers and Credit Card Transfers are referred to herein as the "K2J Cash Transfers").

47.    Defendant uses the ERS Credit Card for gas for his personal automobile, food at restaurants, groceries, payment for his cellular telephone, entertainment, shopping, and paying his legal expenses.

48.     Defendant has made electronic funds transfers to his children on the ERS Credit Card.

49.     Debtor continues to use and possess the ERS Credit Card to pay his personal expenses even post-petition.

50.     The ultimate result of Defendant's use of the K2J Cash Transfers is that Defendant's income is diverted through K2J and ERS in order to hinder, delay and impair the ability of Defendant's creditors, including Plaintiff, to collect their debts against him.

**IV.   *Misstatements In Defendant's Bankruptcy Schedules***

A. *Defendant's Interest in K2J*

51.     Debtor did not list an ownership interest, direct or indirect, in K2J in his Schedules and Statement of Financial Affairs he originally filed in the Bankruptcy Case. *See* Bankruptcy Case Dkt. 11, p. 7.

52.     Debtor did not list the K2J Account in his Schedules and Statement of Financial Affairs he originally filed in the Bankruptcy Case. *See* Bankruptcy Case Dkt. 11, p. 10.

B.  *Defendant's Income*

53.    Defendant reported $12,500.00 in gross income for the present year since January 1, 2017 in his Statement of Financial Affairs. *See* Bankruptcy Case Doc. 11, p. 1.

54.    Defendant reported $12,500.00 in gross income for the year of 2016 in his Statement of Financial Affairs. *See* Bankruptcy Case Doc. 11, p. 2.

55.    Defendant reported $12,500.00 in gross income for the year of 2015 in his Statement of Financial Affairs. *See* Bankruptcy Case Doc. 11, p. 2.

56.    Defendant reported $0 in income from "operating a business" on his Schedule I. *See* Bankruptcy Case Doc. 11, p. 34.

57.    Pursuant to Defendant's 2015 federal Individual Tax Return, K2J reported gross income of $296,378.00 in 2015.

58.    Pursuant to Defendant's 2015 federal Individual Tax Return, Defendant was paid a $60,000.00 as "Director's Salary" in 2015.

59.    The Account Statements for the K2J Account for 2015 demonstrate that the K2J Account has received no less than $533,083.08 in deposits or other credits the year of 2015.

60.    The Account Statements for the K2J Account for 2016 demonstrate that the K2J Account has received no less than $169,737.59 in deposits or other credits for the year of 2016.

61.    The Account Statements for the K2J Account for 2017 demonstrate that the K2J Account has received no less than $79,134.21 in deposits or other credits through June 30, 2017.

62.    Defendant then uses the majority of these funds to pay his personal expenses rather than business expenses.

63.    The funds deposited or otherwise credited to the K2J Account are Defendant's personal income to and of which Defendant has sole access and use.

64.    Defendant's Schedules do not reflect this income.

C. *The Use of the ERS Credit Card For Personal Expenses*

65.    Defendant utilizes the ERS Credit Card to pay various personal expenses.

66.    Defendant does not report this income on his Schedules.

67.    Defendant did not disclose his access to and/or use of the ERS Credit Card on his Schedules.

D. *The Undisclosed Employment or Projects*

68.    Within a year of the Petition Date, Defendant has been involved as a project manager and/or investor in a construction project remodeling a "Hookah Hideaway" on behalf of and/or as partners with Mychel Dillard. Attached hereto as **Exhibit "16"** is a true and correct copy of a Cashier's Check dated March 23, 2017 purchased by Mychel Dillard payable to K2J for $9,476.00 for "Completion of Renovation at the HH".

69.    Upon information and belief, Defendant is engaged in other projects or investments than Hookah Hideaway.

70.    Defendant has not disclosed any ongoing employment or income from a business in his Schedules.

**V.    *Destruction of Financial Documents***

71.    Defendant has have concealed, destroyed, and/or failed to keep or preserve documents, records, and papers from which Defendant's financial condition and business transactions might be ascertained.

72.    Defendant has testified at his Rule 2004 Examination that he does not maintain records related to either his personal finances or those of his businesses, including, but not limited to, K2J.

73.     By virtue of this destruction or failure to maintain financial documents and records, Plaintiff is neither able to ascertain the Debtors' true financial condition nor examine the Defendant's business transactions.

74.     Defendant further was evasive and obtuse in his 2004 Examination and refused to provide basic financial information by repeatedly answering questions regarding same with "I don't recall."

75.     It is axiomatic that bankruptcy is for the honest but unfortunate debtor. As has been shown above, Defendant is neither honest nor unfortunate. On the contrary, Defendant is attempting to use the Bankruptcy Court to achieve dishonest and fraudulent goals.

76.     Debtor owes Plaintiff the amount of $9,144,832.84, representing:

(a)     On the Kashka Judgment: $6,341,352.84 representing unpaid principal in the amount of $2,294,427.00, plus accrued interest in the amount of $1,380,862.24 in accrued interest as of June 29, 2012, plus attorneys' fees in the amount of $551,293.38 as of June 29, 2012, plus post-judgment interest of $2,114,770.22 as of August 11, 2017, together with postjudgment interest accruing at the rate of 18% per annum;

(b)     On the UFTA Judgment: $653,900.00 in general damages, $49,850.00 in attorneys' fees, and $2,100,000.00 in punitive damages, together

with postjudgment interest accruing at the maximum rate allowed by law.

77.     This is a liquidated amount and should be determined non-dischargeable.

78.     Alternatively, this Court should deny Debtor's discharge.

<u>COUNT I</u>
<u>ACTION TO DENY DISCHARGEABILITY OF UFTA JUDGMENT FOR
ACTUAL FRAUD PURSUANT TO 11 U.S.C. § 523(a)(2)(A)</u>

79.     Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 78 above as if the same were fully set forth herein.

80.     The UFTA Judgment is a debt owed by Defendant to Plaintiff for actual and punitive damages awarded as a result of Defendant's actual fraud.

81.     The UFTA Judgment is exempted from discharge pursuant to 11 U.S.C. § 523(a)(2)(A).  *See* <u>In re Kendrick</u>, 314 B.R. 468, 472 (Bankr. N.D. Ga. 2004); *see also* <u>In re Stalnaker</u>, 480 B.R. 440 (Bankr. M.D. Ga. 2009); *see also* <u>In re Slayton</u>, 12-20161, 2013 WL 1080545 (Bankr. S.D. Ga. Mar. 12, 2013).

82.     The UFTA Judgment was incurred in connection with an order of a court of record.

83.    The UFTA Judgment contains specific findings of fraudulent intent and malicious intent to cause harm to Plaintiff.

84.    The UFTA Judgment contains a specific award of Punitive Damages

85.    The UFTA Judgment is thus a nondischargeable indebtedness of Defendant pursuant to 11 U.S.C. § 523(a)(2)(A).

<u>COUNT II</u>
<u>ACTION TO DENY DISCHARGEABILITY OF PLAINTIFF'S DEBT</u>
<u>PURSUANT TO 11 U.S.C. § 523(a)(2)(A) and (B)</u>

86.    Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 85 above as if the same were fully set forth herein.

87.    Defendant obtained money, renewal and extensions of credit by false pretenses, by false representations and/or by actual fraud within the definition of non-dischargeabilty of debts contained in 11 U.S.C. § 523(a)(2).

88.    Defendant perpetrated an actual fraud upon Plaintiff by engaging in a fraudulent transfer scheme whereby he and Scott & Sons transferred away both cash and real property assets to S2 so as to render those assets beyond the reach of Plaintiff's efforts to satisfy its Judgments.

89.    Defendant perpetrated an actual fraud upon Plaintiff by engaging in a fraudulent transfer scheme whereby he transferred away his interest in cash assets

to K2J and by use of the ERS Credit Card so as to render those assets beyond the reach of Plaintiff's efforts to satisfy its Judgments.

90.    Defendant did so with fraudulent intent to hinder, delay or defraud his creditors, including Plaintiff.

91.    Defendant concealed and did not disclose the above-described transfers.

92.    Around the time and after the Note was in default, Defendant engaged in a pattern, practice, and scheme of transferring his assets away from himself so that his personal Guaranty of the Note would be worthless.

93.    Such actions by Defendant made his Guarantys worthless and constitute actual fraud in that, among other things, Defendant hid and concealed changes in his financial condition and the transfer of his assets.

94.    Defendant sought and/or obtained money, renewal or extensions of credit by concealing the above transfers and information.

95.    Plaintiff reasonably or justifiably relied on Defendant's materially false statements/omissions.

96.    Defendant made the above false pretenses, representations and omissions to Plaintiff knowingly, fraudulently, or, a minimum, intentionally recklessly.

97.    Defendant engaged in the fraudulent scheme set forth in the UFTA Case and UFTA Judgment with the intent and purpose of deceiving Plaintiff and hindering, delaying and defrauding Plaintiff.

98.    The UFTA Judgment awarded $653,900.00 in general damages, $49,850.00 in attorneys' fees, and $2,100,000.00 in punitive damages.

99.    The UFTA Judgment is a debt owed by Defendant to Plaintiff for actual fraud based on the fraudulent scheme employed by Defendant to hinder, delay or defraud Plaintiff from collecting its debt against Defendant.

100.    The UFTA Judgment was incurred in connection with an order of a court of record.

101.    Defendant's liability to Plaintiff for fraud is established as a matter of collateral estoppel or similar judicial doctrine for purpose of this adversary proceeding. *See* In re: St. Laurent, 991 F.2d 672, 680 (11th Cir. 1993); *see also* In re Stalnaker, 480 B.R. 440 (Bankr. M.D. Ga. 2009); *see also* In re Slayton, 12-20161, 2013 WL 1080545 (Bankr. S.D. Ga. Mar. 12, 2013).

102.    For this reason, the Defendant's debt to Plaintiff should be excepted from debtor's discharge under 11 U.S.C. § 523(a)(2)(A).

103.    Defendant used S2, K2J, and the ERS Credit Card to perpetuate an actual fraud on Plaintiff for his direct personal benefit.

104.   By the various actions specified taken on the dates shown above, as well as others, Defendant used S2,  K2J, and ERS to perpetrate a fraud on Plaintiff, by dissipating and transferring the money that could have paid Plaintiff's Judgments.

105.   Defendant knew these representations were false or made said false representations recklessly, as a positive assertion, and without knowledge of their truth. Defendant intended for Plaintiff and its predecessor in interest to rely on the false representations.

106.   Defendant's frauds directly and proximately caused injury to Plaintiff for which it here sues.

107.   Plaintiff has sustained loss and damage as a result of Defendant's fraudulent scheme, misrepresentations and/or omissions in the principal amount (through August 11, 2017) of $9,144,832.84, representing:

> (a) On the Kashka Judgment: $6,341,352.84 representing unpaid principal in the amount of $2,294,427.00, plus accrued interest in the amount of $1,380,862.24 in accrued interest as of June 29, 2012, plus attorneys' fees in the amount of $551,293.38 as of June 29, 2012, plus post-judgment interest of $2,114,770.22 as of August 11, 2017,

together with postjudgment interest accruing at the rate of 18% per

annum;

(b) On the UFTA Judgment: $653,900.00 in general damages, $49,850.00

in attorneys' fees, and $2,100,000.00 in punitive damages, together

with postjudgment interest accruing at the maximum rate allowed by

law;

as well as attorneys' fees and other charges or such other amounts to be shown at

trial.

108. Plaintiff is entitled to recover punitive and exemplary damages

because Defendant's actions show willful misconduct, malice, fraud, wantonness,

oppression or that entire want of care which would raise the presumption of

conscious indifference to the consequences.

109. Defendant is hereby notified by Plaintiff that Plaintiff intends to

enforce the provisions of the Note relative to the payment of attorneys' fees.

Pursuant to the provisions of the Loan Documents and O.C.G.A. § 13-1-11,

Defendant has ten (10) days from the date of service of this Complaint upon him

within which to pay the sums due under the Note without also being liable for

attorneys' fees. Plaintiff is entitled to judgment against Defendant for statutory

attorneys' fees pursuant to the Loan Documents and O.C.G.A. § 13-1-11.

110.  Defendant has acted in bad faith, been stubbornly litigious, or has caused Plaintiff unnecessary trouble and expense. Accordingly, Plaintiff is entitled to recover against Defendant all costs and expenses of litigation, including reasonable attorneys' fees pursuant to O.C.G.A. § 13-6-11.

111.  Plaintiff is entitled to exemplary and punitive damages.

## COUNT III
## ACTION TO DENY DISCHARGEABILITY OF PLAINTIFF'S DEBT PURSUANT TO 11 U.S.C. § 523(a)(6)

112.  Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 111 above as if the same were fully set forth herein.

113.  Debtor engaged in fraudulent transfers, fraudulent conveyances and false representations which inflicted willful and malicious injury on Plaintiff, and, as a result the debt owed to Plaintiff, plus interest, is non-dischargeable under § 523(a)(6) of the Bankruptcy Code.

114.  Plaintiff has sustained loss and damage as a result of Defendant's fraudulent scheme in the principal amount (through July 11, 2016) of $9,144,832.84, representing:

(a) On the Kashka Judgment: $6,341,352.84 representing unpaid principal in the amount of $2,294,427.00, plus accrued interest in the

amount of $1,380,862.24 in accrued interest as of June 29, 2012, plus attorneys' fees in the amount of $551,293.38 as of June 29, 2012, plus post-judgment interest of $2,114,770.22 as of August 11, 2017, together with postjudgment interest accruing at the rate of 18% per annum;

(b) On the UFTA Judgment: $653,900.00 in general damages, $49,850.00 in attorneys' fees, and $2,100,000.00 in punitive damages, together with postjudgment interest accruing at the maximum rate allowed by law;

as well as attorneys' fees and other charges or such other amounts to be shown at trial.

115. Plaintiff is entitled to recover punitive and exemplary damages because Defendant's actions show willful misconduct, malice, fraud, wantonness, oppression or that entire want of care which would raise the presumption of conscious indifference to the consequences.

116. Defendant is hereby notified by Plaintiff that Plaintiff intends to enforce the provisions of the Note relative to the payment of attorneys' fees. Pursuant to the provisions of the Loan Documents and O.C.G.A. § 13-1-11, Defendant has ten (10) days from the date of service of this Complaint upon him

within which to pay the sums due under the Note without also being liable for attorneys' fees. Plaintiff is entitled to judgment against Defendant for statutory attorneys' fees pursuant to the Loan Documents and O.C.G.A. § 13-1-11.

117.  Defendant has acted in bad faith, been stubbornly litigious, or has caused Plaintiff unnecessary trouble and expense. Accordingly, Plaintiff is entitled to recover against Defendant all costs and expenses of litigation, including reasonable attorneys' fees pursuant to O.C.G.A. § 13-6-11.

<u>COUNT IV</u>
<u>ACTION TO DENY DEBTOR'S DISCHARGE UNDER § 727(a)(2)(A) AND (B)
REMOVING OR CONCEALING PROPERTY WHICH OTHERWISE WOULD
HAVE BEEN AVAILABLE TO PAY DEBTS</u>

118.  Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 117 above as if the same were fully set forth herein.

119.  Within one year before the petition was filed in this case, Debtor, with intent to hinder, delay or defraud a creditor removed, destroyed or concealed or permitted the transfer, removal, destruction or concealment of his property, property which otherwise would have been available to pay the Judgments. 11 U.S.C. § 727(a)(2)(A).

120. Defendant has dissipated his assets within one year of filing his Bankruptcy Case through the use of K2J and the ERS Credit Card to conceal his personal assets and income.

121. This scheme operated to conceal Defendant's interest in income and cash assets, and Debtor's concealment of his interests in property continued into the one-year period preceding the filing of the Bankruptcy Case.

122. Defendant concealed his receipt of and/or interest in income or income-producing assets both during the one-year period preceding the filing of his bankruptcy case and after the filing of his Bankruptcy Case, and he has failed to provide records showing the disposition of these funds.

123. These funds would have otherwise been available to pay the Judgments.

124. Defendant intentionally concealed these funds to avoid payment of the Judgments.

125. Defendant made the above transfers with the intent to hinder, defraud and delay his creditors, and to conceal same from his creditors.

126. After the Petition Date, Defendant, with intent to hinder, delay or defraud a creditor removed, destroyed or concealed or permitted the transfer,

removal, destruction or concealment of his property and/or property of the estate. 11 U.S.C. § 727(a)(2)(B).

127.   Defendant concealed and secretly retained a beneficial interest in the transferred assets and income and same continued into the one-year period before the Petition Date and has continued after the Petition Date.

128.   Accordingly, Defendant is not entitled to a discharge because he, with intent to hinder, delay or defraud a creditor removed, destroyed or concealed or permitted the transfer, removal, destruction or concealment of his property and/or property of the Defendant's estate, property which otherwise would have been available to pay the Judgments, both in the year before the Petition Date and during the bankruptcy, in violation of 11 U.S.C. § 727(a)(2)(A) and (B), so as to make his Guarantys of the Note worthless.

<u>COUNT V</u>
<u>ACTION TO DENY DEBTOR'S DISCHARGE UNDER § 727(a)(3)</u>
<u>FOR FAILURE TO KEEP OR PRESERVE RECORDS</u>

129.   Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 128 above as if the same were fully set forth herein.

130.  At Defendant's 2004 Examination, Defendant admitted that he failed to keep or preserve books and records from which his financial condition might be ascertained in violation of 11 U.S.C. § 727(a)(3).

131.  Defendant failed to provide complete documentation of the income he received.

132.  Defendant intentionally failed to maintain or preserve these records so as to hinder Plaintiff's ability to collect its Judgments and/or ascertain Defendant's true financial condition.

133.  Defendant intentionally concealed income to avoid payment of the Judgment.

134.  Such failure to keep or preserve books and records was not justified under the circumstances of this case.

135.  Accordingly, Defendant is not entitled to a discharge because, without justification, she failed to keep or preserve books and records from which his financial condition might be ascertained in violation of 11 U.S.C. § 727(a)(3).

COUNT VI
ACTION TO DENY DEBTOR'S DISCHARGE
FOR FALSE OATHS UNDER § 727(a)(4)

136. Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 135 above as if the same were fully set forth herein.

137. Defendant knowingly and fraudulently made false oaths in connection with his bankruptcy case in violation of 11 U.S.C. § 727(a)(4).

138. Defendant failed to disclose his interest in K2J in his Bankruptcy Schedules.

139. In his Bankruptcy Schedules, Defendant fails to disclose his true income for 2015, 2016, or the present year.

140. Defendant fails to disclose his interest in the K2J Account and the corresponding income which he is entitled to receive.

141. Defendant fails to disclose his use of the ERS Credit Card for personal expenses.

142. Defendant fails to disclose his actual personal income as a result of his access to the ERS Credit Card for personal expenses.

143. Defendant's Schedules misrepresent his actual income.

144.  Defendant's false oaths and accounts were and are intentional and material.

145.  Defendant made these false statements under penalty of perjury.

146.  Defendant made these numerous false oaths and accounts with reckless disregard for the truth concerning material matters in this bankruptcy case and to subvert this Court and bankruptcy law.

147.  Defendant knew or should have known that these statements made in his Petition were false.

148.  Accordingly, Defendant is not entitled to a discharge because he made false oaths in connection with his bankruptcy case in violation of 11 U.S.C. § 727(a)(4).

<u>COUNT VII</u>
<u>ACTION TO DENY DEBTOR'S DISCHARGE UNDER § 727(a)(5)
FOR FAILURE TO EXPLAIN LOSS OF ASSETS TO PAY DEBTS</u>

149.  Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 148 above as if the same were fully set forth herein.

150.  As was shown above, Debtor failed to explain satisfactorily a loss of assets to meet liabilities in violation of 11 U.S.C. § 727(a)(5).

151.   Accordingly, Debtor is not entitled to a discharge because she failed to explain satisfactorily a loss of assets to meet liabilities in violation of 11 U.S.C. § 727(a)(5).

## COUNT VII
## RESERVATION OF RIGHTS

152.   Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 151 above, as if the same were fully set forth herein.

153.   Plaintiff reserves the right to pursue any and all claims against Defendant and his coconspirators and transferees as allowed by state law and bankruptcy law.

154.   Plaintiff further reserves its right to amend this Complaint to assert other bases for objection to discharge of Defendant or for determination of non-dischargeability of debt.

WHEREFORE, Plaintiff prays that this Court:

a.      As to Count I, enter judgment determining the debt owed to Plaintiff pursuant to the UFTA Judgment in the amount of $653,900.00 in general damages, $49,850.00 in attorneys' fees, and $2,100,000.00 in punitive damages, together with postjudgment interest accruing at the

maximum rate allowed by law is non-dischargeable pursuant to 11

U.S.C. § 523(a)(2);

b.    As to Count II, enter a non-dischargeable judgment in favor of Plaintiff

and against Debtor for $9,144,832.84, representing:

    i.    On the Kashka Judgment: $6,341,352.84 representing unpaid principal in the amount of $2,294,427.00, plus accrued interest in the amount of $1,380,862.24 in accrued interest as of June 29, 2012, plus attorneys' fees in the amount of $551,293.38 as of June 29, 2012, plus post-judgment interest of $2,114,770.22 as of August 11, 2017, together with postjudgment interest accruing at the rate of 18% per annum; and,

    ii.    On the UFTA Judgment: $653,900.00 in general damages, $49,850.00 in attorneys' fees, and $2,100,000.00 in punitive damages, together with postjudgment interest accruing at the maximum rate allowed by law;

    iii.    Plus attorneys' fees and other charges or such other amounts to be shown at trial.

c.    As to Count III, enter a non-dischargeable judgment in favor of

Plaintiff and against Debtor for $9,144,832.84, representing:

    i.    On the Kashka Judgment: $6,341,352.84 representing unpaid principal in the amount of $2,294,427.00, plus accrued interest in the amount of $1,380,862.24 in accrued interest as of June 29, 2012, plus attorneys' fees in the amount of $551,293.38 as of June 29, 2012, plus post-judgment interest of $2,114,770.22 as of August 11, 2017, together with postjudgment interest accruing at the rate of 18% per annum; and,

       ii.  On the UFTA Judgment: $653,900.00 in general damages, $49,850.00 in attorneys' fees, and $2,100,000.00 in punitive damages, together with postjudgment interest accruing at the maximum rate allowed by law;

       iii.  Plus attorneys' fees and other charges or such other amounts to be shown at trial.

d.     As to Count IV, enter judgment determining that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(2)(A) & (B);

e.     As to Count V, enter judgment determining that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(3);

f.     As to Count VI; enter judgment determining that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(4);

g.     As to Count VII, enter judgment determining that the Debtor is not entitled to a discharge under 11 U.S.C. § 727(a)(5);

h.     Enter judgment against the Debtor for punitive and exemplary damages, as well as attorney's fees and other charges or such other amounts to be shown at trial;

i.     Enter judgment awarding Plaintiff all of its expenses of litigation, including reasonable attorneys' fees; and

j.    Grant such other and further relief as this Court deems just and proper.

Respectfully submitted this <u>11th</u> day of August, 2017.

**ROGERS LAW OFFICES**

<u>*/s/ Beth E. Rogers*</u>
Beth E. Rogers
Georgia Bar No. 612092
Lawrence Lee Washburn IV
Georgia Bar No. 562374
The Equitable Building
100 Peachtree Street, Suite
1950  Atlanta, Georgia 30303
Telephone: 770-685-6320
Facsimile: 678-990-9959
<u>brogers@berlawoffice.com</u>
*Attorneys for Plaintiff*

33